# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>MARINER HEALTH CENTRAL, INC., *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 22-10877 (LSS)<br><br>(Jointly Administered) |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP,<br><br>Plaintiffs.<br><br>v.<br><br>PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Defendant. | Adv. Proc. No. 22-50420 (LSS) |

## DECLARATION OF KRISTY OWEN IN SUPPORT OF MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF AND ENJOINING PROSECUTION OF THE PSC ACTION

I, Kristy Owen, declare as follows:

1. I am the Director of Legal Affairs of Mariner Health Central, Inc. ("**Mariner Central**"), one of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I have held this position for 6 years.

2. I submit this declaration (the "**Declaration**") in support of the *Motion of the Debtors for an Order Granting Injunctive Relief and Enjoining Prosecution of the PSC Action* (the

---

[1] The Debtors, along with the last four digits of each Debtors' tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

1

"**Motion**"). Capitalized terms used but not defined herein have the meanings ascribed in the Motion.

3. All facts set forth in this Declaration are based on (a) my personal knowledge gained over years of experience as an employee of Mariner Central, and/or my review of the Debtors' books and records, relevant documents, and information provided by the Debtors or their representatives, (b) information provided to me by employees of Mariner Central working at my direction, (c) information provided to me by, or discussions with, the members of the Debtors' management team or their advisors, and/or (d) my opinion based upon my experience. I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## MARINER CENTRAL AND ITS SUPPORT SERVICES

4. The Debtors are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies, all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc. (collectively, the "**Mariner Companies**"). Certain of the Mariner Companies operate 20 skilled nursing facilities (the "**Mariner Facilities**").

5. Debtor Parkview Operating Company, LP ("**Parkview**") operates one such Mariner Facility, and Mariner Central provides certain support services to Parkview and to the other Mariner Companies that operate Mariner Facilities (collectively with Parkview, the "**Operators**"). In this manner, as is common in the skilled nursing care industry, the Mariner Companies are able to achieve operating efficiencies and economies of scale by centralizing certain services necessary for operating the Mariner Facilities.

6. Mariner Central provides its services to each Operator pursuant to an Administrative, Clinical and Operational Support Agreement (each, a "**Support Agreement**"). Each Support Agreement is substantially identical. Attached hereto as **Exhibit A** is a true and

correct copy of the Support Agreement between Mariner Central and Almaden Operating Company, LP, one of the Operators and a named defendant in the PSC Action (as defined below).

7. Under the Support Agreements, Mariner Central is responsible for, among other things, billing and submitting claims to Medicare, and for regulatory reporting and cost reports, including but not limited to reporting and returning overpayments, on behalf of the Operators. *See* Support Agreement ¶ 2.1, *id.* Exh. A(c), (e), (f). Mariner Central is also responsible for various payroll and personnel services, including management of certain human resources programs relating to recruitment and retention, and training Operator employees. *See* Support Agreement ¶ 2.1, *id.* Exh. A(a). Mariner Central assists Operators in complying with clinical policies and procedures as well as with federal and state laws. *See* Support Agreement ¶ 2.1, *id.* Exh. A(m). Mariner Central also provides a wide range of supporting activities through operational support teams. *See* Support Agreement ¶ 2.1, *id.* Exh. A(n).

8. Mariner Central also provides in-house counsel services, and related legal and compliance support to the Operators. *See* Support Agreement ¶ 2.1, *id.* Exh. A(p). The Operators rely on Mariner Central to provide such services and do not have their own internal in-house legal functions or other internal capability to respond to discovery requests, oversee outside counsel or otherwise defend a lawsuit. Mariner Central delivers these services, and meets its own needs for such services, through an in-house legal department consisting of two attorneys, two paralegals, one legal assistant and one part-time employee (together, the "**Legal Group**"). The Legal Group is intimately involved with and addresses all aspects of any discovery and litigation involving the Operators, including but not limited to obtaining, overseeing and managing outside legal counsel and responding to discovery requests as necessary. Mariner Central, through the Legal Group,

also assists Operators with document retention policies, including compliance with privacy requirements, and coordinates offsite document storage as appropriate.

9. The Legal Group and its personnel will be central to the Debtors' restructuring efforts and path to confirmation of a plan of reorganization in these Chapter 11 Cases. For example, Darryl Ross, one of the attorneys of the Legal Group, tried portions of the Ledesma Action and is primarily responsible for the Ledesma Appeals,[2] the resolution of which is critical for the Debtors to successfully restructure. I am responsible for managing the Debtors' contracts and reconciling claims, and serve as the primary contact for our restructuring advisors in developing the Debtors' schedules and for documentation needs relating to these Chapter 11 Cases. In addition, the Legal Group is led by Devin Ehrlich, an officer of Mariner Central and an attorney who oversees the defense of various actions that are highly material to the Debtors, including but not limited to the PSC Action and the Integra Action,[3] as well as various professional liability, labor and employment-based actions. To date, Mr. Ehrlich has been instrumental in assuaging employee, union and vendor concerns in light of the Debtors' commencement of these Chapter 11 Cases and in assuring the Debtors' operational compliance within the parameters of the Bankruptcy Code and related first day relief. More broadly, the Legal Group plays a critical role in assuring the Operators, including Parkview, comply with the various laws and regulations that govern them, and will be critical to addressing the pending litigations in connection with the

---

[2] The Ledesma Appeals are described in the Perkins Declaration (parags. 26, 34) and in the Debtors' pending motion for relief from the automatic stay to pursue such appeals [Case No. 22-10877, Docket No. 16].

[3] *United States of America ex rel. Integra Med Analytics LLC v. Mariner Health Care Inc. et al.*, Case No. 3:18-CV-00653-EMC (N.D. Cal.), which action is described further in the Perkins Declaration and is the subject of a parallel proceeding (Adv. Proc. No. 22-50419).

3090599.3

Debtors' efforts to formulate a plan of reorganization that can be supported by various stakeholders.

## THE PSC ACTION

10. The action captioned *People of the State of California v. Mariner Health Care Inc. et al.*, in the Superior Court of the State of California, County of Alameda, Case No. RG21095881 (the "**PSC Action**") asserts claims against the Debtors, and against certain Mariner Companies named therein as well as unidentified defendants (collectively, the "**Non-Debtor Affiliates**") for alleged violations of state and federal laws and regulations relating to the operation of skilled nursing facilities, including California laws relating to staffing and patient care, at certain Mariner Facilities and seeking civil penalties, restitution, appointment of a receiver, appointment of a monitor, and other related relief.

11. Attached hereto as **Exhibit B** is a true and correct copy of the complaint in the PSC Action (the "**PSC Complaint**"). While not specified therein, the monetary awards sought may potentially exceed $2 million.

12. On November 1, 2021, the Defendant filed a motion in the PSC Action for a preliminary injunction for appointment of a monitor to evaluate the operations of Debtors and Non-Debtor Affiliates, the fees and costs of which are to be paid for by Debtors and Non-Debtor Affiliates. The parties have since been engaged in briefing and discovery on that preliminary injunction and in motion practice in connection with the exercise of personal jurisdiction over certain named defendants. The sur-opposition of the Debtors and the Non-Debtor Affiliates to the preliminary injunction is due on October 21, 2022, the Defendant's sur-reply is due October 28, 2022, and a hearing on the preliminary injunction is calendared for November 18, 2022.

13. At this time, the Debtors and Non-Debtor Affiliates have not yet filed an answer to the PSC Complaint, and no further hearings or trial dates have been set in the PSC Action.

14. All of the allegations of the PSC Action relate to the Debtors and the Non-Debtor Affiliates collectively, and do not distinguish between any of the Mariner Facilities or Operators. *E.g.,* PSC Compl. ¶¶ 67 ("Defendants failed to provide sufficient staff to care for their residents."), 80 ("Defendants discharged residents without providing the required legal notice and due process."). Such allegations either relate to Parkview directly or to the conduct involving Mariner Central in providing administrative, clinical, and operational support services to the Operators. Such allegations are inextricably interwoven across the Debtors and the Non-Debtor Affiliates and involve common legal or factual questions. Because of Mariner Central's role in supporting the Operators, such allegations and questions necessarily involve facts and information within the Debtors' possession or control. Many such allegations and issues, particularly regarding staffing, treatment or care policies, and the role of Mariner Central, are also in question in other actions facing the Debtors, including but not limited to certain Covered Actions.[4]

### MARINER CENTRAL WILL BEAR THE BURDEN OF THE PSC ACTION

15. The PSC Action is still in its initial stages. While the parties have briefed and conducted discovery in connection with the pending preliminary injunction motion, an answer has not yet been filed and the parties have not yet exchanged disclosures concerning, or begun discovery for, the PSC Action generally.

16. The allegations of the PSC Complaint relate to the treatment practices of all patients for 19 Mariner Facilities over a four year period. Discovery in connection with such allegations could require all documents and communications relating to the treatment practices for the subject

---

[4] The Covered Actions are certain actions brought by or on behalf of current or former residents of Mariner Facilities, or by current or former employees of various Operators or of Mariner Central, that are the subject of a parallel proceeding in these Chapter 11 Cases (Adv. Proc. No. 22-50418).

Mariner Facilities and thousands upon thousands of patients over such period. Such requests could easily total multiple millions of pages.

17. For example, Defendant is alleging issues with thousands of patient discharges spanning this period. Such discovery will warrant producing and reviewing thousands of former residents' medical charts and identifying and deposing numerous former and current clinical staff for each of the subject Mariner Facilities. Discussions with the Defendant suggest that general discovery in the PSC Action – apart from the discovery for the preliminary injunction that has already involved multiple depositions, retention of several expert witnesses and review of thousands of pages of documents produced by Defendant – will likely require depositions of *fifty-plus* witnesses from the Debtors and Non-Debtor Affiliates. The parties will also be required to review voluminous materials related to payroll and employee punch-detail reports as well as submissions to the Center of Medicare and Medicaid Services as it relates to daily staffing at each of the subject Mariner Facilities over that four year period.

18. Much of the information necessary to prosecute or defend the PSC Action claims, such as billing statements, financial and administrative records or relevant emails, is within the possession or control of Mariner Central. In contrast, only some of the relevant information will be within the possession or control of the Operators. This includes information within the possession or control of Debtor Parkview, which will be responsive in light of the collective allegations of the PSC Action. Overall, the substantial majority of relevant information is likely to be within the possession or control of Mariner Central.

19. In addition to this document discovery from Mariner Central, many of the persons most knowledgeable regarding the allegations of the PSC Action, particularly with respect to activity across Mariner Facilities, will be current or former employees of Mariner Central. Other

current or former employees of Mariner Central will also have relevant information or knowledge regarding staffing practices, transfer/discharge notices, employment policies and other such issues pertinent to the allegations. Accordingly, many of the fifty-plus deponents referenced above will be current or former employees of Mariner Central.

20. As noted above, the Operators rely on Mariner Central to provide in-house legal and compliance services and do not have the capability to respond to discovery requests, oversee outside counsel or otherwise manage a defense of legal actions or proceedings. Accordingly, the Operators rely on Mariner Central to manage and coordinate defense of the PSC Action.

21. If the PSC Action proceeds, the costly and time-intensive burden to respond to discovery, oversee outside counsel and manage the defense of the Non-Debtor Affiliates would inevitably fall heavily on Mariner Central personnel. Such burdens will divert our attention from and impair our ability to address issues relating to these Chapter 11 Cases, including but not limited to our ability to reconcile claims and deliver necessary reporting, to pursue the Ledesma Appeals, to manage employees, vendors and creditors dealing with the Chapter 11 Cases, and to assist efforts to confirm a plan of reorganization.

## THE INDEMNIFICATION AND ADVANCEMENT OBLIGATIONS

22. Each Support Agreement obligates Mariner Central to indemnify and defend its counterparty Operator and such Operator's managers, employees, affiliates for any and all claims and losses incurred in connection with any breaches or failures by Mariner Central of its obligations, or any negligent act, willful omission or fraud by Mariner Central. *See* Support Agreement § 6.1. Because the PSC Action asserts claims against Mariner Central for actions or failures relating to its obligations or conduct under the Support Agreements, Mariner Central is obligated to indemnify and advance costs for the Operators and their personnel on account of the PSC Action.

23. In addition, the Mariner Central certificate of incorporation and bylaws both provide for indemnification and advancement to all persons made party or otherwise involved in any action by reason of being a current and former director and officer of Mariner Central or its predecessors, or by reason of service as a director, officer, employee or agent of any other entity at the request of Mariner Central. If resulting in officer or employee costs or losses, the PSC Action may also lead to indemnification and advancement obligations for Mariner Central under its organizational documents.

24. These obligations, including for costs of defense, potential settlements, and judgments, will be a heavy burden on Mariner Central. To date, with the PSC Action still in its preliminary stages after more than a year, the legal fees, expert fees and other costs incurred by Mariner Central in defending the PSC Action have already exceeded $1,000,000. All available insurance coverage for such costs has already been exhausted. Such costs are expected to spike significantly as the PSC Action proceeds with document review, depositions, related motion practice, and trial.

## **REORGANIZATION**

25. While the Debtors lack the ability to satisfy all claims asserted against them in full after recent adverse litigation developments, with the benefit of the automatic stay and a breathing spell from litigation, the Debtors expect to be able to formulate and pursue acceptance of a confirmable plan of reorganization that preserves operations, protects patients and has the requisite creditor support.

*[ remainder of page intentionally left blank ]*

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: October 4, 2022

By: _____
Kristy Owen
Director of Legal Affairs
Mariner Health Central, Inc.