# EXHIBIT B



MATTHEW RODRIQUEZ
Acting Attorney General of California
JENNIFER EULER
Chief Assistant Attorney General
LUKE VANDERDRIFT, State Bar No. 248235
Deputy Attorney General
  2329 Gateway Oaks Drive, Suite 200
  Sacramento, CA 95833-4252
  Telephone: (916) 621-1839
  Fax: (916) 263-0426
  E-mail: Luke.VanderDrift@doj.ca.gov

NANCY E. O'MALLEY
District Attorney of Alameda County
LORI SCHNALL, State Bar No. 195556
Deputy District Attorney
  1225 Fallon Street, Suite 900
  Oakland, CA 94612-4208
  Telephone: (510) 272-6222
  E-mail: Lori.Schnall@acgov.org

LORI E. FRUGOLI
District Attorney of Marin
ANDRES PEREZ, State Bar No. 186219
Deputy District Attorney
  3501 Civic Center Drive, Suite 145
  San Rafael, CA 94903-4189
  Telephone: (415) 473-6450
  Fax: (415) 473-3719
  E-mail: Aperez@marincounty.org

Exempt from filing fees pursuant to
Government Code section 6103

**FILED**
ALAMEDA COUNTY

APR 08 2021

CLERK OF THE SUPERIOR COURT
By _____ Deputy
JEFFREY S. ROSELL

District Attorney of Santa Cruz County
DOUG ALLEN, State Bar No. 99239
Assistant District Attorney
  701 Ocean Street, Suite 200
  Santa Cruz, CA. 95060
  Telephone: (831) 454-2930
  Fax: (831) 454-2227
  E-mail:
  Douglas.Allen@santacruzcounty.us

GEORGE GASCÓN
District Attorney of Los Angeles County
SEZA MIKIKIAN, State Bar No. 245285
Deputy District Attorney
  211 West Temple Street, Suite 1000
  Los Angeles, CA 90012
  Telephone: (213) 257-2450
  E-mail: Smikikian@da.lacounty.gov

*Attorneys for Plaintiff,*
  The People of the State of California

SUPERIOR COURT OF THE STATE OF CALIFORNIA

FOR THE COUNTY OF ALAMEDA

| | |
|---|---|
| PEOPLE OF THE STATE OF CALIFORNIA,<br><br>Plaintiff,<br><br>vs.<br><br>MARINER HEALTH CARE INC., a Delaware corporation; NATIONAL SENIOR CARE, INC., a Delaware corporation; MARINER HEALTH CARE MANAGEMENT CO., a Delaware corporation; MARINER HEALTH CENTRAL INC., a Delaware corporation; ALMADEN OPERATING COMPANY LP, a Delaware limited partnership; AUTUMN | Case No.:  **RG21095881**<br><br>COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE RELIEF, RESTITUTION, AND OTHER EQUITABLE RELIEF<br><br>(Business and Professions Code, §§ 17200, 17500 *et seq*; Civil Code, §3494) |

1

1    HILLS OPERATING COMPANY LP, a
     Delaware limited partnership; CREEKSIDE
2    OPERATING COMPANY LP, a Delaware
     limited partnership; DRIFTWOOD HAYWARD
3    OPERATING COMPANY LP, a Delaware
     limited partnership; DRIFTWOOD SANTA
4    CRUZ OPERATING COMPANY LP, a
5    Delaware limited partnership; FREMONT
     HEALTHCARE OPERATING COMPANY LP,
6    a Delaware limited partnership; FRUITVALE
7    LONG TERM CARE, LLC, a Delaware limited
     liability company; HAYWARD HILLS
8    OPERATING COMPANY LP, a Delaware
     limited partnership; INGLEWOOD
9    OPERATING COMPANY LP, a Delaware
     limited partnership; VERDUGO VISTA
10   OPERATING COMPANY LP, a Delaware
11   limited partnership; MONTEREY PALMS
     OPERATING COMPANY LP, a Delaware
12   limited partnership; PARKVIEW OPERATING
     COMPANY LP, a Delaware limited partnership;
13   SAN RAFAEL OPERATING COMPANY LP,
14   a Delaware limited partnership; PALM
     SPRINGS OPERATING COMPANY LP, a
15   Delaware limited partnership;
     REHABILITATION CENTER OF SANTA
16   MONICA OPERATING COMPAN LP, a
     Delaware limited partnership; SANTA
17   MONICA OPERATING COMPANY LP, a
18   Delaware limited partnership; SKYLINE SAN
     JOSE OPERATING COMPANY LP, a
19   Delaware limited partnership; VALE
     OPERATING COMPANY LP, a Delaware
20   limited partnership; SAN MARCOS
21   OPERATING COMPANY LP, a Delaware
     limited partnership; AND DOES 1 THROUGH
22   50.

23                    Defendants.

24      The People of the State of California ("the People" or "Plaintiff") bring this suit,

25   represented by the Attorney General of the State of California and the District Attorneys for

26   Alameda County, Marin County, Santa Cruz County, and Los Angeles County, who are

27   authorized to protect the general public within the State of California from unlawful and unfair

28

2

1  business practices and from false, deceptive or misleading representations. The People hereby

2  allege the following on information and belief:

3

4  ## I.    INTRODUCTION

5      1.    Skilled Nursing Facilities ("SNFs" or "facilities") in California are full of some of the

6  most vulnerable patients in our healthcare system. Named Defendants, Mariner Health Care, Inc.

7  et al. (hereinafter collectively referred to as "Mariner" or "Defendants"), have failed to provide

8  adequate care under the law to its resident patients, trading people for profits at every turn. This

9  complaint seeks to remedy Defendants' failures to protect their patients in California who are

10  mostly seniors and disabled residents in need of high levels of skilled nursing care. Defendants

11  understaffed facilities leading to resident harm, illegally and unsafely discharged residents out of

12  the facilities, and falsified staffing numbers to inflate their advertised ratings, all to generate

13  increased profits at the expense of resident care.

14      2.    Defendants have failed to maintain the legally required number of staff members per

15  resident. Medicare, Medi-Cal, and other sources pay SNFs, so residents have adequate staff to

16  care for their needs. Defendants have systematically siphoned off funds necessary for appropriate

17  staffing resulting in staffing levels so low that residents received insufficient care and suffered

18  serious maladies, pain, and distress. The systematic understaffing violated laws intended to

19  protect senior and disabled residents and, on the contrary, resulted in their harm. The following

20  are just a few examples:

21      &bull;   Residents received inadequate wound care, resulting in leg amputations that were

22          easily avoidable.

23      &bull;   Residents developed deep ulcers, some reaching their bones causing unbearable

24          pain.

25      &bull;   Infectious diseases spread throughout Defendants' facilities unnecessarily due to

26          lack of infection control protocols. Numerous residents have and continue to have

27          untreated scabies, lice, and pests which with proper treatment and care could be

28          resolved.

- Residents with predatory histories and violent pasts were brought into the facilities and sexually assaulted other residents. There was insufficient staff to protect residents. Despite the high number of sexual assaults none were reported, as legally required.

- On many occasions, residents and staff called 911 for help. Yet Defendants repeatedly failed to protect its residents and document the incidents.

3.    Defendants discharged residents without providing legally required notice and legal due process. Defendants were incentivized to discharge residents when their Medicare coverage expired because Medi-Cal or other payment sources pay less. Rather than adhere to the discharge rules and protect residents, Defendants' illegally discharged residents to open beds for new residents with Medicare coverage thereby generating greater profits. Often called "patient dumping," Defendants forced residents out of the facilities without adequate notice, without the right to appeal, and without the legally required discharge plans to ensure residents were discharged safely. Residents were left often unable to care for themselves and without a place to go.

4.    Defendants provided falsified information relating to staffing to the Center for Medicare and Medicaid Services ("CMS") so that Defendants appeared to deliver a higher level of care than they actually provided. CMS uses the staffing data to calculate a "star rating" for each facility for prospective families to consider when selecting a facility. A "Five Star Rating" is the highest rating. Defendants provided CMS distorted and inflated staffing numbers to obtain a higher rating than warranted. For example, Defendants counted vacation and other leave time as "worked" hours for purposes of compiling the number of staff working in a facility. This is inconsistent with the reporting requirements and inflates the numbers of actual staff working per resident. Inflated ratings were published on the CMS website and republished on other websites for consumers to evaluate different SNFs. Defendants' fabricated reporting resulted in false and misleading statements to consumers.

5.    Finally, Defendants collectively failed to provide residents with adequate care, discharged patients without proper notice and preparation, and falsified information to mislead

1  consumers into selecting Defendants' skilled nursing facilities. These business practices violate

2  California's Unfair Competition Law (Business and Professions Code §17200 et seq.) and the

3  False Advertising Law (Business and Professions Code §17500 et seq.).

4

5                                      **II.   PARTIES**

6      6.   Plaintiff is the People of the State of California, by and through the Attorney General

7  of California, the District Attorney of Santa Cruz County, the District Attorney of Alameda

8  County, the District Attorney of Marin County, and the District Attorney of Los Angeles County,

9  each of whom are authorized by Business and Professions Code §§ 17204,17206, 17353, and

10  17536 to enforce the Unfair Competition Law or UCL (Business and Professions Code §17200 et

11  seq.) and the False Advertising Law or FAL (Business and Professions Code §17500 et seq.).

12      7.   Defendants are a family of related and interconnected for-profit legal entities based

13  out of Maryland and Georgia which together operate 19 SNFs in California. Each SNF is run by

14  upwards of a dozen legal entities with various shell entities.

15      8.   Defendant MARINER HEALTH CARE INC. is a Delaware corporation with

16  headquarters in Atlanta, Georgia. Defendant did or does own, manage, or control some or all of

17  the 19 skilled nursing facilities, either directly or through its subsidiaries. All 19 of its facilities

18  are located in California as detailed on the entity's website at https://www.marinerhealthcare.com

19  and listed below. During the times mentioned herein, MARINER HEALTH CARE INC.

20  conducted business throughout the State of California, including within the Counties of Alameda,

21  Los Angeles, Marin, and Santa Cruz, either directly or through control of its subsidiaries.

22      9.   Defendant NATIONAL SENIOR CARE INC. is a Delaware corporation with

23  headquarters in Atlanta, Georgia. NATIONAL SENIOR CARE INC. is the direct or indirect

24  owner of MARINER HEALTH CARE INC. NATIONAL SENIOR CARE INC., as owner of

25  MARINER HEALTH CARE INC., conducts business throughout the State of California,

26  including within the Counties of Alameda, Los Angeles, Marin and Santa Cruz, either directly or

27  through control of its subsidiaries.

28

10.  Defendant MARINER HEALTH CARE MANAGEMENT CO. is a Delaware corporation with headquarters in Sparks, Maryland. Defendant MARINER HEALTH CARE MANAGEMENT CO. did or does own and/or operate some or all of the 19 SNFs in California, either directly or through control of its subsidiaries. During the times mentioned herein, MARINER HEALTH CARE MANAGEMENT CO. conducted business throughout the State of California, including within the Counties of Alameda, Los Angeles, Marin, and Santa Cruz, either directly or through control of its subsidiaries.

11.  Defendant MARINER HEALTH CENTRAL INC. is a Delaware corporation with headquarters in Sparks, Maryland. Defendant MARINER HEALTH CENTRAL INC. did or does own and/or operate some or all of the 19 SNFs in California, either directly or through control of its subsidiaries. During the times mentioned herein, MARINER HEALTH CENTRAL INC. conducted business throughout the State of California, including within the Counties of Alameda, Los Angeles, Marin, and Santa Cruz, either directly or through control of its subsidiaries.

12.  Defendant ALMADEN OPERATING COMPANY LP is a Delaware limited partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. ALMADEN OPERATING COMPANY LP holds the license to operate the 77-bed skilled nursing facility with its principal place of business located at 2065 Los Gatos-Almaden Road, San Jose, California, and doing business as Almaden Healthcare and Rehabilitation Center.

13.  Defendant AUTUMN HILLS OPERATING COMPANY LP is a Delaware limited partnership located at One Ravinia Drive, Suite 1400, Atlanta Georgia. AUTUMN HILLS OPERATING COMPANY LP holds the license to operate the 99-bed skilled nursing facility with the principal place of business located at 430 North Glendale Avenue, Glendale, California, and doing business as Autumn Hills Health Care Center.

14.  Defendant CREEKSIDE OPERATING COMPANY LP is a Delaware limited partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. CREEKSIDE OPERATING COMPANY LP holds the license to operate the 80-bed skilled nursing facility with the principal place of business located at 1900 Church Lane, San Pablo, California, and doing business as Creekside Healthcare Center.

6

1     15.  Defendant DRIFTWOOD HAYWARD OPERATING COMPANY LP is a Delaware

2     limited partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. DRIFTWOOD

3     HAYWARD OPERATING COMPANY LP holds the license to operate the 88-bed skilled

4     nursing facility with the principal place of business located at 19700 Hesperian Boulevard,

5     Hayward, California, and doing business as Driftwood Healthcare Center – Hayward.

6     16.  Defendant DRIFTWOOD SANTA CRUZ OPERATING COMPANY LP is a

7     Delaware limited partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia.

8     DRIFTWOOD SANTA CRUZ OPERATING COMPANY LP holds the license to operate the 92-

9     bed skilled nursing facility with the principal place of business at 675 24th Avenue, Santa Cruz,

10    California, and doing business as Driftwood Healthcare Center – Santa Cruz.

11    17.  Defendant FREMONT HEALTHCARE OPERATING COMPANY LP is a Delaware

12    limited partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. FREMONT

13    HEALTHCARE OPERATING COMPANY LP holds the license to operate the 115-bed skilled

14    nursing facility with the principal place of business located at 39022 Presidio Way, Fremont,

15    California, and doing business as Fremont Healthcare Center.

16    18.  Defendant FRUITVALE LONG TERM CARE, LLC is a Delaware limited liability

17    company located at 920 Ridgebrook Road, Sparks, Maryland. FRUITVALE LONG TERM

18    CARE, LLC holds the license to operate the 140-bed skilled nursing facility with the principal

19    place of business located at 3020 East 15th Street, Oakland, California, and doing business as

20    Fruitvale Healthcare Center.

21    19.  Defendant HAYWARD HILLS OPERATING COMPANY LP is a Delaware limited

22    partnership. HAYWARD HILLS OPERATING COMPANY LP holds the license to operate the

23    74-bed skilled nursing facility with the principal place of business located 1768 B Street,

24    Hayward, California, and doing business as Hayward Hills Health Care Center.

25    20.  Defendant INGLEWOOD OPERATING COMPANY LP is a Delaware limited

26    partnership. INGLEWOOD OPERATING COMPANY LP holds the license to operate the 99-

27    bed skilled nursing facility with the principal place of business located at 100 South Hillcrest

28    Boulevard, Inglewood, California, and doing business as Inglewood Health Care Center.

1    21.  Defendant VERDUGO VISTA OPERATING COMPANY LP is a Delaware limited

2  partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. VERDUGO VISTA

3  OPERATING COMPANY LP holds the license to operate the 92-bed skilled nursing facility with

4  the principal place of business located at 3050 Montrose Avenue, Los Angeles, California, and

5  doing business as La Crescenta Healthcare Center.

6    22.  Defendant MONTEREY PALMS OPERATING COMPANY LP is a Delaware

7  limited partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. MONTEREY

8  PALMS OPERATING COMPANY LP holds the license to operate the 99-bed skilled nursing

9  facility with the principal place of business located at 44610 Monterey Avenue, Palm Desert,

10  California, and doing business as Monterey Palms Health Care Center.

11    23.  Defendant PARKVIEW OPERATING COMPANY LP is a Delaware limited

12  partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. PARKVIEW

13  OPERATING COMPANY LP holds the license to operate the 121-bed skilled nursing facility

14  with the principal place of business located at 27350 Tampa Avenue, Hayward, California, and

15  doing business as Parkview Healthcare Center.

16    24.  Defendant SAN RAFAEL OPERATING COMPANY LP is a Delaware limited

17  partnership. SAN RAFAEL OPERATING COMPANY LP holds the license to operate the 101-

18  bed skilled nursing facility with the principal place of business located at 45 Professional Center

19  Parkway, San Rafael, California, and doing business as Pine Ridge Care Center.

20    25.  Defendant PALM SPRINGS OPERATING COMPANY LP is a Delaware limited

21  partnership located at One Ravinia Drive, Suite 1400, Atlanta, Georgia. PALM SPRINGS

22  OPERATING COMPANY LP holds the license to operate the 99-bed skilled nursing facility with

23  the principal place of business located at 277 South Sunrise Way, Palm Springs, California, and

24  doing business as Palm Springs Healthcare & Rehabilitation Center.

25    26.  Defendant REHABILITATION CENTER OF SANTA MONICA OPERATING

26  COMPANY LP is a Delaware limited partnership located at One Ravinia Drive, Suite 1400,

27  Atlanta, Georgia. REHABILITATION CENTER OF SANTA MONICA OPERATING

28  COMPANY LP holds the license to operate the 144-bed skilled nursing facility with the principal

8

1    place of business located at 1338 20th Street, Santa Monica, California, and doing business as

2    The Rehabilitation Center of Santa Monica.

3         27.  Defendant SANTA MONICA OPERATING COMPANY LP is a Delaware limited

4    partnership located One Ravinia Drive, Suite 1400, Atlanta, Georgia.  SANTA MONICA

5    OPERATING COMPANY LP holds the license to operate the 59-bed skilled nursing facility with

6    the principal place of business located at 1320 20th Street, Santa Monica, California, and doing

7    business as Santa Monica Health Care Center.

8         28.  Defendant SKYLINE SAN JOSE OPERATING COMPANY LP is a Delaware

9    limited partnership located One Ravinia Drive, Suite 1400, Atlanta, Georgia. SKYLINE SAN

10    JOSE OPERATING COMPANY LP holds the license to operate the 253-bed skilled nursing

11    facility with the principal place of business located at 2065 Forest Avenue, San Jose, California,

12    and doing business as Skyline Healthcare Center – San Jose.

13         29.  Defendant VALE OPERATING COMPANY LP is a Delaware limited partnership

14    located One Ravinia Drive, Suite 1400, Atlanta, Georgia. VALE OPERATING COMPANY LP

15    holds the license to operate the 202-bed skilled nursing facility with the principal place of

16    business located at 13484 San Pablo Avenue, San Pablo, California, and doing business as Vale

17    Healthcare Center.

18         30.  Defendant SAN MARCOS OPERATING COMPANY LP is a Delaware limited

19    partnership located in Atlanta, Georgia. SAN MARCOS OPERATING COMPANY LP holds the

20    license to operate the 118-bed skilled nursing facility with the principal place of business located

21    at 1586 West San Marcos Boulevard, San Marcos, California, and doing business as Village

22    Square Healthcare Center

23         31.  DOES 1 through 50 ("DOES") are business entities or persons violating laws related

24    to Defendants' SNFs. The names and identities of defendants DOES 1 through 50 are unknown to

25    the People, and when they are known, this complaint will be amended to state their names and

26    identities.

27         32.  Defendants are alter-egos of each other and have a unity of interest and ownership

28    such that their separate personalities do not meaningfully exist. Defendants regularly conduct

9

1    business throughout the State of California and are jointly operating and profiting from the

2    facilities located in California.

3        33.  At all relevant times, each Defendant has committed the acts, or permitted others to

4    commit the acts, alleged in this complaint. Whenever reference is made in this complaint to any

5    Defendant, such allegations shall mean that each Defendant acted individually and jointly with

6    the other Defendants.

7        34.  Each and every Defendant, named and unnamed, conspired with and aided and

8    abetted each and every other Defendant to commit the unlawful, unfair, and deceptive practices.

9        35.  Whenever in this complaint reference is made to any act of any corporate Defendant,

10    such allegation shall be deemed to mean that such corporate Defendant did the acts alleged in the

11    complaint through its officers, directors, agent, employees, subsidiaries and/or representatives

12    while they were acting within the ostensible scope of their authority.

13        36.  The violations of law herein described have been committed throughout the State of

14    California, including but limited to, the Counties of Alameda, Los Angeles, Marin, and Santa

15    Cruz.

16        37.  Defendants' actions, as set forth below, are in violation of the laws and public

17    policies of the State of California and are inimical to the rights and interests of the general public

18    as consumers, competitors, and citizens. This suit is brought in the public interest to protect

19    California consumers and vulnerable populations victimized by Defendants' conduct. The People

20    have a substantial state interest in the elimination and prevention of the unlawful practices alleged

21    herein. Until the People are granted the remedies sought herein, including injunctive relief by

22    order of this Court, Defendants will continue to engage in unlawful acts and practices set forth

23    above and below and will continue to cause injury and harm to a large and vulnerable California

24    population and the general public as a whole.

25

26

27

28

### III.   STATUTORY BACKGROUND

**A. Laws Protecting SNF Residents**

38.  Due to their vulnerability, the elderly and disabled residents of SNFs are protected by many state and federal laws.

39.  Residents are entitled to enjoy the "fundamental human rights" set in California's Patient Bill of Rights. (Cal. Code of Regs. ("CCR"), title 22, § 72527.)

40.  Residents have the right to receive the necessary care and services to attain or maintain the highest practicable well-being. (22 CCR § 72315; 42 USC § 1396r(b)(2); 42 USC § 1395i-3(b)(2); 42 CFR § 483.24.)

41.  The SNF must care for its residents in such a manner as to maintain or enhance the quality of life of each resident. (42 USC § 1396r(b)(1); 42 USC § 1395i-3(b)(1); 42 CFR § 483.10(a)(1).)

42.  Residents have the right to receive care to prevent bedsores. (Cal. Health & Safety Code § 1599.1(b).)

43.  The SNF must employ an adequate number of qualified personnel. (Cal. Health & Safety Code § 1599.1(a); 22 CCR § 72501(e).)

44.  Residents have the right to be treated with dignity. (22 CCR § 72527(a)(12); 22 CCR § 72315(b); 42 CFR § 483.10(a) & (e).) This includes the right to reasonable accommodation of individual needs and preferences (42 USC § 1395i-3(c)(1)(A)(v); 42 USC § 1396r (c)(1)(A)(v); 42 CFR § 483.10(e)(3)) and the right to social services to attain or maintain the highest practicable well-being. (42 USC § 1395i-3(b)(4)(A)(ii); 42 USC § 1396r (b)(4)(A)(ii); 42 CFR § 483.40(d).)

45.  Residents are entitled to a safe, clean, comfortable, and homelike environment. (Cal. Health & Safety Code § 1599.1(e); 42 CFR § 483.10(i)(1).)

46.  Residents have the right to participate in planning care and treatment, including any changes, as well to receive the services in their care plan. (42 USC § 1395i-3(c)(1)(A)(i); 42 USC § 1396r(c)(1)(A)(i); 42 CFR § 483.10(c)(2); 42 CFR § 483.10(b)(7)(iii).) Residents also have the

1  right to refuse treatment. (22 CCR § 72528(b)(6); 22 CCR § 72527(a)(4); 42 CFR §

2  483.10(c)(6).)

3      47.  Residents have the right to be temporarily absent from the facility and the right to

4  have their bed held when temporarily hospitalized. (Cal. Welf. & Ins. Code § 14108.2; 42 CFR §

5  483.15(d) & (e).)

6      48.  Residents have the right to be free from interference or reprisal for exercising their

7  rights and voicing grievances. (Cal. Health & Safety Code § 1432; 22 CCR § 72527(a)(7); 42

8  CFR § 483.10(j); 42 USC § 1395i-3(c)(1)(A)(vi); 42 USC § 1396r(c)(1)(A)(vi); 42 CFR §

9  483.10(b)(1)-(2).)

10      49.  Residents have the right to be free from chemical and physical restraints. (22 CCR §

11  72527(a)(23); 22 CCR § 72319; 42 USC § 1395i-3(c)(1)(A)(ii); 42 USC § 1396r(c)(1)(A)(i); 42

12  CFR § 483.12.)

13      50.  Residents have many protections against being discharged from their SNF. (See, e.g.,

14  42 CFR § 483.15) Generally, the SNF must permit a resident to remain in the facility unless a

15  specified statutory exemption exists, such as the resident no longer needs the services of the

16  facility or the resident's needs cannot be met there. (42 CFR § 483.15(c)(1)) Residents are

17  entitled to reasonable notice of a discharge, which is at least 30 days in most circumstances. (22

18  CCR § 72527; 42 CFR § 483.15(c)(4).) The facility must document the basis for the transfer or

19  discharge in the resident's record. (42 CFR § 483.15(c)(2).) The discharge must be safe and

20  conducted with sufficient preparation and orientation. (22 CCR § 72527; 42 CFR § 483.15(c)(7).)

21  The SNF must also notify the ombudsman of any facility-initiated transfers or discharges. (Cal.

22  Health & Safety Code § 1439.6.) When a resident is sent to the hospital, he or she is entitled to

23  have his SNF bed held for seven days. (22 CCR § 72520.)

24      51.  Due to the vulnerable position of SNF residents, incidents of suspected abuse and

25  neglect involving SNF residents must be reported to various authorities, such as local law

26  enforcement, the State Long-Term Care Ombudsman, and the Department of Public Health. (Cal.

27  Welf. & Ins. Code § 15610 et. seq.; 42 CFR § 483.12.)

28

**B. California's Unfair Competition Law**

52.  Business and Professions Code section 17200 states in pertinent part that "unfair competition shall mean and include unlawful, unfair, or fraudulent business practice..." The violation of any law, statute, regulation, or other legal mandate can serve as a basis for an "unlawful" act under the UCL. Section 17203 of the Business and Professions Code provides that "[a]ny person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction."

53.  Business and Professions Code section 17206(a) provides that any person violating the UCL "shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney." Where the act is perpetrated against a senior or disabled individual, the violator is subject to an additional $2,500 civil penalty for each act. (Business and Professions Code § 17206.1.) Under section 17205, these penalties are "cumulative to each other and to the remedies or penalties available under all other laws of this statute."

**C. California's False Advertising Law**

54.  Business and Professions Code section 17500 generally prohibits false and misleading statements. Business and Professions Code section 17535 provides that any person engaging in false advertising, as defined by the FAL, within this state may be enjoined in any court of competent jurisdiction.

55.  Section 17536(a) provides that any person violating Section 17500 "shall be liable for a civil penalty not to exceed two thousand five hundred dollars ($2,500) for each violation, which shall be assessed and recovered in a civil action brought in the name of the people of the State of California by the Attorney General or by any district attorney.

**D. Public Nuisance**

56.  Pursuant to Code of Civil Procedure section 3494, "a public nuisance may be abated by any public body or officer authorized thereto by law." Courts have recognized that the

1   Attorney General and district attorneys have authority to maintain an action in the name of the

2   People of the State of California to abate a public nuisance.

3

4                   **IV.   STANDING, JURISDICTION AND VENUE**

5       57.  The People have standing to bring this action pursuant to California Business and

6   Professions Code sections 17204, 17206, 17206.1, 17535 and 17536.

7       58.  This Court has subject matter jurisdiction over this matter pursuant to Business and

8   Professions Code section 17200 et seq. and Business and Professions Code section 17500 et seq.

9       59.  The Court has original jurisdiction over this action pursuant to the California

10  Constitution article VI, section 10.

11      60.  This Court has jurisdiction over each Defendant named above, because each is a

12  business entity or individual that does sufficient business and/or has sufficient minimum contacts

13  in California, or otherwise avails itself of the California market by providing skilled nursing care

14  services in California, such as to render the exercise of jurisdiction over it by the California courts

15  consistent with traditional notions of fair play and substantial justice.

16      61.  Venue is proper in this Court pursuant to Code of Civil Procedure section 395.5

17  because the causes of action, or parts thereof, arise in Alameda County. Mariner owns and

18  operates 19 SNFs in California. Five of the worst care providers are located in Alameda County:

19  Parkview Health Care Center in Hayward; Driftwood Health Care Center in Hayward; Fruitvale

20  Health Care Center in Oakland; Fremont Health Care Center in Fremont; and Hayward Hills

21  Healthcare Center in Hayward. These SNFs cause a public nuisance and operate in violation of

22  law in a manner that causes significant harm to residents of Alameda County.

23      62.  Venue is also proper in this Court pursuant to Code of Civil Procedure section 393(a)

24  because violations of law that occurred in the County of Alameda are a "part of the cause" upon

25  which the Plaintiff seeks recovery of penalties imposed by the statute.

26

27

28

PEOPLE'S COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE RELIEF, RESTITUTION AND OTHER EQUITABLE RELIEF

## V.    FACTUAL ALLEGATIONS

63.  Defendants have been paid tens of millions of dollars to provide care for elderly, frail, and disabled persons. Most of this money was paid by public funds through the Medicare and Medi-Cal systems.

64.  Defendants run for-profit companies that voluntarily sought to participate in the Medicare and Medi-Cal programs.

65.  Participation in the Medicare and Medi-Cal programs is conditioned upon compliance with state and federal laws and regulations.

66.  Defendants have failed to provide the statutory minimum level of care to their residents and in the process have violated statutes and regulations regarding SNFs.

### Mariner Failed to Have Enough Staff

67.  Defendants failed to provide sufficient staff to care for their residents.

68.  The failure to provide sufficient staff is well known within the SNF industry to lead to inadequate care, neglect, and an unsafe environment for elders and dependent adults.

69.  Defendants were required by law to specifically assess the acuity needs of each resident and create a detailed Minimum Data Set (MDS) analysis for each resident. This comprehensive assessment outlines the resident's functional capabilities and health problems.

70.  From the MDS reports, the nursing hours expected for the residents can be determined.

71.  The number of nursing hours that Defendants provided to its residents were substantially less than what would be expected for their resident population.

### Mariner Residents Suffered Because of Insufficient Staff

72.  The staffing deficiency at Defendants' SNFs impaired the quality of life of residents. Residents were not provided the level of services they needed and suffered as a result. The level of care at Defendants' SNFs routinely fell below the statutory floor of acceptable practices.

73.  Since 2017, the California Department of Public Health has found at least 1,588 violations of regulations at Mariner facilities.

74. Defendants neglected their residents by failing to protect them from violence and sexual predation by other residents.

75. Defendants failed to monitor residents resulting in residents wandering off from their SNFs.

76. Defendants were unable to manage the mental health issues of their residents and needed to call law enforcement to take residents into police custody because Defendants could not manage their mental health needs.

77. Defendants were unable to control infections in their SNFs. Scabies, lice, and other pests infested residents in Defendants' SNFs.

### Defendants Illegally Discharged Its Residents

78. Defendants routinely discharged residents without complying with the laws protecting SNF residents.

79. Defendants discharged residents without legal justification for removing residents from the SNF.

80. Defendants discharged residents without providing the required legal notice and due process.

81. Defendants discharged residents unsafely.

82. Defendants discharged residents without providing discharge planning.

83. Defendants discharged residents without notifying the ombudsman.

84. Defendants refused to honor bed holds when residents were sent to the hospital.

85. Defendants used law enforcement to remove residents whose needs were beyond what Defendants could manage.

### Defendants Fraudulently Represented Staffing Levels to Enhance Their Star Rating

86. Defendants inflated their staffing levels to increase their star rating.

87. Within the SNF industry, SNFs are evaluated on a five-star system, with one being the lowest and five being the highest.

88. A SNF's star rating is widely distributed, and SNFs with high star ratings promote their status in marketing materials.

16

89. Prospective SNF residents and their family members rely on the star rating system to assess SNF quality.

90. A SNF's star rating is determined in part by the number of staff reported on a Form 671 submitted to the Centers for Medicare & Medicaid Services.

91. Defendants systematically inflated their staffing numbers on their Form 671 which is provided to the Centers for Medicare & Medicaid Services.

92. The inflated SNF hours reported by Defendants led to inaccurate and misleading star ratings for Defendants' SNFs and falsified advertising to consumers.

## VI. TOLLING

93. The parties entered into valid tolling agreements dated December 19, 2019 and October 14, 2020 preserving Plaintiff's right to pursue violations beyond the typical limitations period provided by the statute, both in law and equity. The tolling period began November 1, 2019 through and including May 1, 2021.

94. All causes of actions are also tolled by the order of the Governor of California pursuant to Executive Order N-38-20, and by Judicial County Emergency Rule 9.

## FIRST CAUSE OF ACTION FOR UNFAIR COMPETITION
### (AGAINST ALL DEFENDANTS)
Violations of Business and Professions Code §17200 *et seq.*
(Unfair Competition Law)

95. The People re-allege and incorporate by reference each of the paragraphs above as though fully set forth herein.

96. At all times relevant to the allegations herein, Defendants have been and are engaged in the business of running skilled nursing facilities, owning, and operating property used for nursing care.

97. Defendants have violated and continue to violate Business and Professions Code section 17200 by engaging in unlawful, unfair, or fraudulent business acts or practices by violating the laws protecting SNF residents listed above.

17

98. Specifically, Defendants in the four years prior to the filing of this Complaint plus the tolling period, have violated the legal duties described in paragraphs 38 through 51, hereinabove and have committed the conduct set forth in paragraphs 63 through 92 hereinabove, thus engaging in unlawful and unfair business practices.

99. Through understaffing facilities, Defendants' have profited unlawfully and unfairly at the expense of residents. Defendants are continuing the unlawful and unfair conduct of understaffing the facilities to save on staffing expenses and unlawfully profit from the corresponding neglect of the residents.

100. Defendants' have failed to report incidents of suspected abuse and neglect required, undermining the ability of the State Long Term Care Ombudsman to advocate for the residents.

101. Defendants' have utterly failed to comply with discharge notice requirements; instead of providing the requisite 30-day notice; they often provide no notice or notice of less than three days or even after the actual discharge. This deprives residents of their rights to appeal and is an indication of the greater problem of the unfair practice of "patient dumping."

102. Defendants' have misrepresented their staffing in reports to CMS to obtain a more favorable "Five Star Rating" which Defendants then use to falsely and misleadingly advertise the quality of their facilities.

103. Defendants' violations have materially harmed numerous SNF residents.

### SECOND CAUSE OF ACTION FOR FALSE ADVERTISING
### (AGAINST ALL DEFENDANTS)
Violations of Business and Professions Code §17500, et seq.
(False and Misleading Statements)

104. People re-allege and incorporate by reference each of the paragraphs above as though fully set forth herein.

105. Defendants provide required staffing and other reporting to the Center of Medicare and Medicaid Services (CMS), and also reporting to the California Office of Statewide Health Planning and Development (OSHPD). The reporting to CMS is done on some occasions with the

18

1    knowledge and intent to obtain a favorable rating known as the "Five Star Rating." The Five Star

2    Rating is a universal rating system used by facilities to advertise to prospective residents.

3         106. Defendants, within the four years prior to the filing of this Complaint plus the tolling

4    period, have provided false staffing information to CMS to obtain a favorable "Five Star Rating."

5    . CMS publishes this information on its public website and Defendants re-publish the star rating

6    on their own website and in their advertising. The published "Five Star Rating" is obtained by

7    false reporting; thus Defendants are causing false and/or misleading information to be published

8    in their advertising, which is known, or reasonably known, to be false and/or misleading in

9    violation of Business and Professions Code section 17500.

10         107. The unlawful conduct, acts and omissions of Defendants in violation of section

11    17500 of the Business and Professions Code, as set forth herein, demonstrate the necessity and

12    legal basis for granting injunctive relief, disgorgement, and restitution to victims pursuant to

13    section 17535 of the Business and Professions Code and imposing civil penalties pursuant to

14    section 17536 of the Business and Professions Code of $2,500 for each violation including, but

15    not limited to, each such publication and re-publication and/or for each continuous day of

16    publication.

17

18    **THIRD CAUSE OF ACTION FOR PUBLIC NUISANCE**
**(AGAINST ALL DEFENDANTS)**

19    Violation of Civil Code § 3494

20    (Public Nuisance)

21         108. A "nuisance" is defined in section 3479 of the Civil Code as "[a]nything which is

22    injurious to health, including, but not limited to, the illegal sale of controlled substances, or is

23    indecent or offensive to the senses, or an obstruction to the free use of property, so as to interfere

24    with the comfortable enjoyment of life or property . . . ."

25         109. A "public nuisance" is defined in section 3480 of the Civil Code as a nuisance

26    "which affects at the same time an entire community or neighborhood, or any considerable

27    number of persons, although the extent of the annoyance or damage inflicted upon individuals

28    may be unequal."

1       110. Pursuant to Code of Civil Procedure section 3494, "a public nuisance may be abated

2 by any public body or officer authorized thereto by law." Courts have recognized that the

3 Attorney General and district attorneys have authority to maintain an action in the name of the

4 People of the State of California to abate a public nuisance.

5       111. Defendants' conduct is injurious to the public health and has interfered with the

6 comfortable enjoyment of life or property.

7       112. Defendants created a substantial and unreasonable threat to public health and safety.

8 Defendants' conduct has caused significant harm and its social utility is outweighed by the

9 gravity of the harm inflicted.

10       113. The public health hazard affects and/or interferes with an entire community's and/or

11 a considerable number of persons' right to health, safety, peace, comfort, and convenience in the

12 State of California thereby constituting a public nuisance pursuant to California Civil Code

13 section 3480.

14       114. Defendants are liable for public nuisance in that Defendants created and/or

15 contributed to the creation of and/or assisted in the creation and/or were a substantial contributing

16 factor in the creation of the public nuisance.

17

18 **PRAYER FOR RELIEF**

19 **WHEREFORE**, Plaintiff prays for judgment against Defendants as follows:

20       1.    For up to $2,500 in civil penalties for each violation of Business and Professions

21 Code section 17200, pursuant to Business and Professions Code section 17206;

22       2.    For up to $2,500 in civil penalties for each violation pursuant to Business and

23 Professions Code section 17206.1, subdivision (a) that the court assesses;

24       3.    For up to $2,500 in civil penalties for each violation of Business and Professions

25 Code section 17500, pursuant to Business and Professions Code section 17536;

26       4.    For civil penalties pursuant to Civil Code section 3345;

27       5.    For a temporary restraining order, preliminary injunction, permanent injunction, and

28 other orders prohibiting Defendants, their agents, officers, directors, successors and assigns, and

1    subsequent purchasers from engaging in unfair competition as defined in Business and

2    Professions Code section 17200, from engaging in misleading and false advertising pursuant to

3    Business and Profession Codes section 17500; and from creating a public nuisance in violation of

4    Civil Code section 3491;

5        6.    For restitution and repayment of unjust enrichment pursuant to Business and

6    Professions Code sections 17203 and 17535;

7        7.    For appointment of a receiver;

8        8.    For appointment of a monitor;

9        9.    For costs; and

10      10.   For such other and further relief as the Court deems just and proper.

11

12    Dated: April 7, 2021                       Respectfully Submitted,

13

14

15

16

17                                          By: Luke VanderDrift

18                                          Deputy Attorney General
Doug Allen
Assistant District Attorney of Santa Cruz

19                                          Lori Schnall
Deputy District Attorney of Alameda

20                                          Seza Mikikian
Deputy District Attorney of Los Angeles

21                                          Andres Perez
Deputy District Attorney of Marin

22

23

24

25

26

27

28

PEOPLE'S COMPLAINT FOR CIVIL PENALTIES, INJUNCTIVE RELIEF, RESTITUTION AND OTHER EQUITABLE RELIEF