# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:   Mariner Health Central Inc.<br><br>Chapter 11 Debtor | Case No.   22-10877 |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP,<br>              Plaintiff,<br><br>vs.<br>PEOPLE OF THE STATE OF CALIFORNIA<br><br>              Defendant | Adv. Proc. No. 22 -50420 |

1

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

## Table of Contents

II. THE PEOPLES ENFORCEMENT ACTION. ...................................................................8
III. WHAT IS MARINER? ...................................................................................................11
IV. SECTION 105 POWER SHOULD BE CAUTIOUSLY EXERCISED. .........................14
V. THE FACTUAL BASIS ASSERTED BY DEBTORS DOES NOT SUPPORT THE EXERCISE OF SECTION 105 JURISDICTION. ...................................................................15
VI. SOMEONE HAS TO PROTECT THE PATIENT/RESIDENTS OF THE MARINER SYSTEM, IF NOT CALIFORNIA, THEN THE BURDEN FALLS UPON THIS COURT..............16
VII. CONCLUSION ................................................................................................................17

2

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF AND ENJOINING PROSECUTION OF THE PSC ACTION**

## TABLE OF AUTHORITIES

### Cases

*20th Century Ins. Co. v. Stewart* (1998) 63 Cal.App.4th 1333, 1339 ...........................................12
*Aerojet General Corp.* v. *D. Zelinksy & Sons, supra,* 249 Cal.App.2d 604, 608.........................12
*Bradley* v. *Rosenthal, supra,* 154 Cal. 420, 426-427 ...................................................................12
*City & County of San Francisco v. PG&E Corp.* (9th Cir. 2006) 433 F.3d 1115, 1124-1125 ....13
*Combustion Eng'g*, 391 F.3d at 232 ..............................................................................................15
*Davidson v. Welch* (1969) 270 Cal.App.2d 220, 226-227 [75 Cal.Rptr. 676] ..............................12
*Davison* v. *Diamond Match Co., supra,* 10 Cal.App.2d 218, 221-222 .........................................12
*Federal-Mogul*, 300 F.3d at 382 ....................................................................................................15
*Goldman* v. *Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377], 44...........12
*Herrerro* v. *Atkinson, supra,* 227 Cal.App.2d 69, 74....................................................................12
*Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.)* (Bankr.E.D.Pa. 2002) 273 B.R. 374, 384-386.)..............................................................................................................13
*Lewis Ave. Parent Teachers' Assn.* v. *Hussey, supra,* 250 Cal.App.2d 232, 236.........................12
*Mayor & City Council of Baltimore v. BP P.L.C.* (D.Md. 2019) 388 F. Supp. 3d 538, 570-571 ................13
*Penn Terra Ltd. v. Dep't. of Envtl. Res.,* 733 F.2d 267 (3d Cir. 1984).........................................13
*Penn Terra, Ltd. v. Department of Environmental Resources* (3d Cir. 1984) 733 F.2d 267, 273. ..............14
*Schron v Grunstein*, 36 Misc. 3d 1238(A) ....................................................................................10
*Schron v. Grunstein*, 32 Misc. 3d 231 ...........................................................................................10
*State Farm Fire & Casualty Co. v. Eddy, supra,* 218 Cal. App. 3d 958, 968...............................12
*University Medical Ctr. v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065 (3d Cir. 1992)..........13
*W.R. Grace & Co. v. Chakarian (In re W.R. Grace & Co.)* (3d Cir. 2009) 591 F.3d 164, 173 ....................15

### Statutes

11 USC §362(a)...............................................................................................................................13
11 USC §362[b][4]..........................................................................................................................13
11USC§362(b) ................................................................................................................................13
28 U.S.C. § 1452 .............................................................................................................................13
42 C.F.R. section 483.15(c), 483.10(g)............................................................................................8
42 U.S.C. section 1395i-3(c) ............................................................................................................8
42 U.S.C. section 1396r(c) ...............................................................................................................8
Cal Welfare & Institutions Code § 15630 .......................................................................................8
Cal. Health and Safety Code section 1439.6 ...................................................................................8
California Business and Professions Code §17200.........................................................................8
California Insurance Code, § 533..................................................................................................12
Civ. Code, § 1668...........................................................................................................................12
Civ. Code, § 2773...........................................................................................................................12

3

**OBJECTION
TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF
AND ENJOINING PROSECUTION OF THE PSC ACTION**

## Treatises

Rest., Restitution, § 88, subd. b, p. 394 and Comment, pp. 395-396 ........................................................12
Witkin, *op. cit.*, § 66, pp. 438-439 .................................................................................................................12

## Regulations

22 C.C.R. section 72520(a) ..............................................................................................................................8
42 C.F.R. section 483.15(c) .............................................................................................................................8

4

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

**OBJECTION
TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF
AND ENJOINING PROSECUTION OF THE PSC ACTION**

COMES NOW, the People of the State of California, through the Attorney General of the State of California, and the District Attorneys of Alameda, Los Angeles, Marin and Santa Cruz Counties of California, and object to the Debtors Motion for an order staying the law enforcement action in California State Court,[1] which California action seeks compliance with minimum mandatory standards for care of the vulnerable patient/residents in Debtor's skilled nursing system.[2]

**I.    SUMMARY OF OBJECTION**

The California Department of Justice first contacted Mariner's skilled nursing operations management in 2019 to make them aware of the preliminary results of their investigation indicating that Mariner facilities appeared to be understaffing and failed to comply with California law which mandates reporting of incidents of elder/dependent endangerment.[3] The investigation was subsequently joined by County prosecutors, and further concluded that Mariner has, and continues to refuse to comply with the mandatory notice of discharge laws across all facilities, routinely has and continues to understaff across all facilities, and falsely reports staffing to the California Department of Health and the Federal Center for Medicare Services to

---

[1] The action is entitled, PEOPLE OF THE STATE OF CALIFORNIA v. MARINER HEALTH CARE INC., *et. al.*, California Superior Court, Alameda County case number RG21095881, (hereinafter, "Enforcement Action")
[2] The People do not consent to the to the entry of a final order by the Court. This case is a non-core proceeding.
[3] Mariner's is a chain of 20 skilled nursing facilities, all in California with one individual owner and approximately 48 corporations operated as one system. Attached to the *DECLARATION OF DOUGLAS B. ALLEN IN SUPPORT OF OBJECTION TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF AND ENJOINING PROSECUTION OF THE PSC ACTION* ("Allen Declaration"), as exhibit 6 are three deposition transcripts that describe the Mariner chain of companies and an organization chart as exhibit 8.

5

**OBJECTION
TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF
AND ENJOINING PROSECUTION OF THE PSC ACTION**

achieve inflated quality ratings, while their public financial records show significant profit and cash flow across the system.[4]

Contrary to the misrepresentations made by Mariner in their motion, the People do not seek to take 50 plus depositions or cause the production of thousands of pages of patient charts.[5] Instead, the People have focused efforts in attempting to negotiate injunctive relief to correct Mariner's conduct. Even though this case has been pending for a year and a half, as related to the enforcement action, it is only defendants who have taken depositions, which was of three (3) witnesses. The People took three (3) depositions all taken in one day, related to a motion to quash service filed by the three parent corporations of Debtors.[6] The People do not seek to litigate individual patient outcomes, but to enforce systemwide compliance with the law through injunctive relief and later deterrence through assessment of penalties.

The People have already established a near total failure to comply with discharge notice requirements by administrative subpoena to the California State Office of the Ombudsman.[7] By publicly available records held by the Federal Center for Medicare Services ("CMS"), the People have determined that Mariner routinely and systematically understaffs their facilities by 20% below California's **minimum** numerical standards, let alone providing sufficient staff to meet

---

[4] There is a reason that Mariner has an inordinate number of personal injury claims, approximately 2 active per facility with the *Ladesma* plaintiffs being awarded a $22 million verdict reduced to a $14 million judgment.
[5] The statements made in the DECLARATION OF KRISTY OWEN IN SUPPORT OF MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF AND ENJOINING PROSECUTION OF THE PSC ACTION, are absurd and completely without any foundation in fact. Kristy Owen is only a paralegal working out of her home in Texas. Her deposition is attached to the Allen Declaration as exhibit 6(c).
[6] Debtor claims in the Enforcement Action that these parents have no connection with the California skilled nursing operations, however, in this action the Debtor claims to have paid the parent corporation's attorney's fees.
[7] Mariner is required to copy the notices to the local offices of the State Ombudsman's Office. A simple subpoena to the State Ombudsman revealed that Mariner chronically failed to comply. Se Exhibit 4, to the Allen Declaration.

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

patient needs.[8] The People will want to review staff time records to confirm the staffing analysis, but those records are electronically stored and can be produced by a simple download of information on a memory device into an Excel spreadsheet.[9] The information is literally a few keystrokes away. The failure to report incidents is established by obtaining local law enforcement records and comparing them to public records of reports to the Department of Health.[10] Finally, false reporting is established by a simple comparison of the internal staffing data to that which is reported to CMS. The People already have the evidence establishing their case which is supplanted by resort to readily available public and electronic records.

The entire Mariner system is run by four decision makers and the sole owner.[11] One person is the president of every single operating company and management company. This small group is responsible to setting the systemwide policies and practices that lead to the tragic patient outcomes which give rise to so many personal injury complaints.

The law on application of 11 USC §105, suggests restraint. The automatic stay under §362 has been held to not apply to California's Unfair Competition Law enforcement actions. This Court lacks jurisdiction to act absent finding impact upon the pecuniary interest of the bankruptcy estate. Here the People merely seek to force Debtors and their affiliates to follow the law and to protect one of the most vulnerable populations in California. That will be achieved through injunctive relief and experts to monitor Mariner's compliance. Penalty amounts which

---

[8] See paragraph 9 of the Allen Declaration and the declaration of forensic accountant, Valerie Gray, Exhibit 9 to the Allen Declaration.
[9] See the testimony of Valerie Gray forensic accountant Exhibit 10, attached to the Allen Declaration.
[10] See Exhibits 1(a) and (b) to the Allen Declaration.
[11] Exhibit 6 contains 3 deposition transcripts where Ken Tabler, President of Mariner Health Central, and to others describe the management of Mariner and the sole ownership. See also exhibit 7 describing the establishment of Mariner, all in the Allen Declaration.

7

arise across and are assessed against 20 facilities, should be liquidated to a claim through the trial of a uniquely State law action. Execution of that claim is already automatically stayed and will be handled through estate administration. Finally, if this Court is inclined to stay the Alameda County California Superior Court, then this Court should impose the injunctive relief directly and appoint sufficient monitoring to require compliance with the laws designed to protect these vulnerable resident patients.

## II. THE PEOPLES ENFORCEMENT ACTION.

In recent years prior to the pandemic, the State of California has increased its enforcement of patient protections in skilled nursing facilities ("SNFs"). In 2017, an *ad hoc* task force of local prosecutors and the Attorney General was formed to investigate multiple SNF chains. By 2021, the Attorney General had devoted substantial resources to these investigations, elevating its Bureau of Medical Fraud and Elder Abuse to a Division of the Department of Justice, forming the new Division of Health Safety and marshalling the resources of its Consumer Protection Section to police misconduct in this area.

Ongoing investigations have resulted in multiple criminal prosecutions across the state. Through the investigations informal discussions with SNF providers have resulted in ongoing reforms. Judgments which included final injunctions and ongoing compliance monitoring have been entered in Los Angeles, Bakersfield and a preliminary injunction in Santa Cruz, California. The latter case is an example of the success of these efforts, where compliance monitoring through a stipulated preliminary injunction has resulted in significant improvement in patient outcomes. Where the facility had previously exhibited almost no compliance with the discharge notice and planning, including discharging a patient to an open field, they have become 100%

8

compliant. Police calls have been reduced by 60% as have complaints to the California Department of Public Health. Resident weight loss, the incidence of acquired bedsores and death due to facility negligence have been dramatically reduced.

A similar approach has been attempted with the Mariner chain of SNFs. It began with investigations into excessive police calls and review of system wide lack of discharge compliance which revealed systemic failures to report violent and dangerous incidents to the California Department of Health and a complete failure to comply with discharge notice requirements.[12] Face-to-face meetings between with Dept. of Justice lawyers and investigators with Mariner's counsel and management, failed to result in compliance so in April of 2021, the People filed an action against Mariner. Continued discussions were unfruitful to bring about compliance so in October 2021, the People filed a motion for a preliminary injunction. Defendants responded with a demurrer. Litigation including discovery was informally put on hold while the parties discussed settlement. This proceeded without litigation until discussions broke down in June of 2022. The hearing on the demurrer was set along with a hearing on the Preliminary Injunction. The three parent corporations of Mariner had also filed a motion to

---

[12] Pursuant to California Business and Professions Code §17200 et seq., California's Unfair Competition Law, California law enforcement can prosecute civil actions enforcing injunctions and assessing penalties for failure to comply with all laws and regulations both State and Federal. SNF residents are entitled to 30-day notices of discharge just as a resident of a rental unit with be entitled to such notice. Resident notices are to include notice of appeal rights, pursuant to 42 U.S.C. section 1395i-3(c), 42 U.S.C. section 1396r(c), and 42 C.F.R. section 483.15(c), 483.10(g); and 22 C.C.R. section 72520(a), with a copy of the written notice of transfer or discharge to the local Long-Term Care Ombudsman within the time required by Cal. Health and Safety Code section 1439.6 and 42 C.F.R. section 483.15(c). Failing to report incidents of suspected of abuse and neglect as required by Cal Welfare & Institutions Code § 15630, is a crime in California and also civilly enforceable pursuant to Business and Professions Code §17200 et seq.

9

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

quash service based upon a lack of personal jurisdiction in California and three depositions of Mariner Officers were taken in a single day regarding the jurisdictional issue.[13]

The demurrer, similar to the outlandish claims of prospective discovery in this case, claimed amongst other things that the State Court should abstain due to the alleged volume of mini trials regarding each resident discharge, however such "mini-trials" are unnecessary since it is the policy of refusing to issue discharge notices that is the object of the complaint. The demurrer was overruled in its entirety.[14] Because of the hiatus between filing and hearing on the preliminary injunction, the People filed supplemental evidence supporting the preliminary injunction motion. Defendants demanded depositions and time to respond which request was granted by the People. Three more depositions were taken by Mariner. Three days of depositions of the People's 2 experts and their primary investigator were conducted and now the hearing on the preliminary injunction is set for November 18, 2022.

On October 4, 2022, the People met with Mariner attorneys and executives yet again in an all-day meeting to try to reach an agreement on a preliminary injunction. Those discussions continue. Contrary to the portrayal by Debtors in this motion the People have neither inundated Mariner with discovery requests nor failed at any turn to take into consideration burdens of the litigation upon Mariner. The People have consistently attempted to explore cooperative

---

[13] These depositions were to investigate the relationship of the three parent corporations, National Senior Care Inc., Mariner Health Care Inc. and Mariner Healthcare Management Co., to the California operations. Mariner contended that the parent companies were not related to the Debtors, but then they are run and owned by the same small group of individuals.

[14] The order of Judge Seligman is attached to the Allen Declaration as Exhibit 11. See page 4 of 8, where the Court states, "First, the claims, as alleged, do not require the court to engage in a complex multi-factor analysis or 'mini-trials.'"

10

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

compliance. What is frustrating to the People is that Mariner, even now, has utterly failed to voluntarily address compliance on any of the issues raised to their attention.

### III. WHAT IS MARINER?

The Mariner chain of California SNFs is a product of a hostile leveraged buyout accomplished by Attorney Leonard Grunstein and his business partner Murray Foreman.[15] Once the real estate and other holdings were sold off, all that was left were the 20 SNFs in California owned by Harry Grunstein, the brother of Leonard. The ownership tracks through the now empty corporations, National Senior Care, Inc., Mariner Health Care Inc. and Mariner Health Care Management Co.[16] Harry Grunstein has passed away and now the sole owner is Emily Grunstein.[17] Although Mariner Health Central subleases an office in a law firm in Georgia which is the titular headquarters of the three shell entities, they have no revenue, neither do they own nor lease any property and they pay no dividends.[18] Ms. Grunstein is an employee of the Debtor, Mariner Health Central Inc. and receives a salary but does not provide any service to the company. Ken Tabler is the President of each of the three parent companies and of the Debtor, Mariner Health Central Inc. Mr. Tabler and Devin Ehrlich are the sole members of the board of directors of each of the parent companies and of the Debtor, Mariner Health Central Inc., at least up and until this case was filed.[19]

---

[15] See the decision of the New York State Supreme Court in, *Schron v Grunstein*, 36 Misc. 3d 1238(A), is Exhibit 7 to the Allen Declaration. Further discussion can be found at *Schron v. Grunstein*, 32 Misc. 3d 231.
[16] See the CORPORATE OWNERSHIP STATEMENT page 18, Docket 1, case number 22-10877.
[17] See the deposition of Kenneth Tabler exhibit 6(a) to the Allen Declaration.
[18] Ibid.
[19] The corporate authority to file this Chapt. 11 indicates that Craig Barbarosh is the sole member of the board of directors of Mariner Health Central Inc. See Docket 1, page 7, case number 22-10877. See Exhibit 6.

11

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

Mariner Health Central Inc.'s Chief Compliance Officer, Linda Taetz, is the President of each and every operating company of the SNFs run by Mariner Health Central Inc. and the Managing Partner of each of the management companies for the SNFs.[20] This core group of individuals operates the system, sets the policies and practices and manages the money. Thus, none of the related parties can make a claim adverse to the Debtor unless the ownership and core management of the Debtor instruct them to do so.

Debtors continue to cite to insider "arm-in-arm" contracts to point to the indemnity that Debtor, Mariner Health Central Inc. must provide to the related operating companies. However, simply reading further down in the same document attached to the declaration of Kristy Owen at paragraph 6.2 of the same document it is revealed that the indemnity is reciprocal. In other words, to the extent any creditor claims actually arise from the conduct of the SNF operating company the Debor has a claim of indemnity from that operating company.

This source of funds is not insignificant, since for example in only one of the 20 operating companies, Almaden Operating Company LP, which operates the Almaden Care and Rehabilitation Center in San Jose, California, the company had a $2.45 million profit in 2021. That operating company had a net equity of, $9.6 million in 2021.[21] This is only one of the 20 operating companies.

However, as addressed in the People's Rule 12 motion, under California law neither contractual indemnity nor insurance apply to Unfair Competition claims based upon unlawful

---

[20] An organization chart produced by Mariner is attached to the Allen Declaration Exhibit 8, and the Deposition of Linda Taetz is Exhibit 6(b).
[21] The financials are publicly available through the Department of Health Care Access and Information, formerly the Office of Statewide Health Planning and Development (OSHPD).

12

**OBJECTION
TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF
AND ENJOINING PROSECUTION OF THE PSC ACTION**

conduct. "All contracts which have for their object, directly or indirectly, to exempt anyone from responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, whether willful or negligent, are against the policy of the law." (Civ. Code, § 1668). (See also: Civ. Code, § 2773 and California Insurance Code, § 533; "Section 2773 makes void an agreement to indemnify another for a later act that is known to be unlawful." (*20th Century Ins. Co. v. Stewart* (1998) 63 Cal.App.4th 1333, 1339; citing to: *State Farm Fire & Casualty Co. v. Eddy, supra*, 218 Cal. App. 3d 958, 968; *Davidson v. Welch* (1969) 270 Cal.App.2d 220, 226-227 [75 Cal.Rptr. 676]; citing to: Rest., Restitution, § 88, subd. b, p. 394 and Comment, pp. 395-396; *Goldman v. Ecco-Phoenix Elec. Corp.* (1964) 62 Cal.2d 40 [41 Cal.Rptr. 73, 396 P.2d 377], 44; *Bradley v. Rosenthal, supra*, 154 Cal. 420, 426-427; *Lewis Ave. Parent Teachers' Assn. v. Hussey, supra*, 250 Cal.App.2d 232, 236; *Aerojet General Corp. v. D. Zelinksy & Sons, supra*, 249 Cal.App.2d 604, 608; *Herrerro v. Atkinson, supra*, 227 Cal.App.2d 69, 74; and *Davison v. Diamond Match Co., supra*, 10 Cal.App.2d 218, 221-222; and Witkin, *op. cit.*, § 66, pp. 438-439.).

The People's action does not endanger the Chapter 11, estate. It only seeks to bring the various operating companies and Mariner Health Central Inc. into compliance with the law intended to protect the lives, safety, health and rights of a substantial population of some of the most vulnerable people in California. The People intend to do this through injunctive relief and the employment of compliance monitoring, which could be easily funded by any one of the 20 SNF operating companies.

13

**OBJECTION
TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF
AND ENJOINING PROSECUTION OF THE PSC ACTION**

Although the People ultimately intend to seek sanctions for past and ongoing unlawful conduct, that will be assessed specifically against those responsible for unlawful conduct and as they may apply to the Debtors will be addressed as a claim in the estate (11 USC §362[b][4]).

## IV. SECTION 105 POWER SHOULD BE CAUTIOUSLY EXERCISED.

The public safety exception to 11 USC §362(a), is well recognized and has been held to expressly apply to California's Unfair Competition Law prosecutions. "The actions filed by the Attorney General and San Francisco were brought pursuant to California's Unfair Competition Law, Cal. Bus. & Prof. Code section 17200. The restitution claims in the actions do not relate primarily to the protection of the government's pecuniary interest in the debtor's property." (*City & County of San Francisco v. PG&E Corp.* (9th Cir. 2006) 433 F.3d 1115, 1124-1125.). "If the purpose of the law is to promote "public safety and welfare," or to "effectuate public policy," then the exception applies."  (*Mayor & City Council of Baltimore v. BP P.L.C.* (D.Md. 2019) 388 F. Supp. 3d 538, 570-571). Congress has expressly exempted actions like the one brought by the People of the State of California in Alameda County from the automatic stay and from removal. (11USC§362(b); 28 U.S.C. § 1452; *Penn Terra Ltd. v. Dep't. of Envtl. Res.*, 733 F.2d 267 (3d Cir. 1984); *University Medical Ctr. v. Sullivan (In re University Medical Ctr.)*, 973 F.2d 1065 (3d Cir. 1992); (*Koken v. Reliance Group Holdings, Inc. (In re Reliance Group Holdings, Inc.)* (Bankr.E.D.Pa. 2002) 273 B.R. 374, 384-386.)

The Third Circuit has cautioned against unwarranted intrusion into the exception to Section 362.

"Congress intentionally used such a broad term as "police and regulatory powers," we find that the exception to the automatic stay provision contained in subsections 362(b)(4)-(5)

14

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

**should itself be construed broadly, and no unnatural efforts be made to limit its scope**. The police power of the several States embodies the main bulwark of protection by which they carry out their responsibilities to the People; **its abrogation is therefore a serious matter**. Congress should not be assumed, therefore, to have been miserly in its refund of that power to the States. Where important state law or general equitable principles protect some public interest, they should not be overridden by federal legislation unless they are inconsistent with explicit congressional intent such that the supremacy clause mandates their supersession. For the same policy reasons, the "exception to the exception" created by subsection 362(b)(5), rendering 'enforcement of a money judgment' by a government unit susceptible to the automatic stay, should be construed *narrowly* so as to leave to the States as much of their police power as a fair reading of the statute allows." (*Penn Terra, Ltd. v. Department of Environmental Resources* (3d Cir. 1984) 733 F.2d 267, 273.) (emphasis added).

## V. THE FACTUAL BASIS ASSERTED BY DEBTORS DOES NOT SUPPORT THE EXERCISE OF SECTION 105 JURISDICTION.

Further, even the factual basis asserted by Debtors herein is a dubious basis for the exercise of Section 105 jurisdiction. The contention by Debtors is that pursuant to a potential indemnity claim (specifically barred by California law), between literally the same individuals representing technical parties, which indemnity has not been invoked by claim or lawsuit, is plainly insufficient to support Section 105 jurisdiction. "…[W]e have stated and restated that, in order for a bankruptcy court to have related-to jurisdiction to enjoin a lawsuit, that lawsuit must 'affect the bankruptcy without the intervention of yet another lawsuit.'… a bankruptcy court lacks subject matter jurisdiction over a third-party action if the only way in which that third-party

action could have an impact on the debtor's estate is through the intervention of yet another lawsuit." (*W.R. Grace & Co. v. Chakarian* (*In re W.R. Grace & Co.*) (3d Cir. 2009) 591 F.3d 164, 173; quoting from: *Federal-Mogul*, 300 F.3d at 382; *Combustion Eng'g*, 391 F.3d at 232.)

Even assuming arguendo, that the related operating companies could strain to articulate a legal theory to sue or claim that Debtors are required to indemnify them, all that would be required to prevent such an imposition upon the Debtors' reorganization is for Linda Taetz, Devin Erlich, Ken Tabler and Emily Grunstein to decide not to sue themselves. The factual basis asserted to support this motion is too tenuous to warrant the exercise of Section 105 jurisdiction.

## VI. SOMEONE HAS TO PROTECT THE PATIENT/RESIDENTS OF THE MARINER SYSTEM, IF NOT CALIFORNIA, THEN THE BURDEN FALLS UPON THIS COURT.

The ongoing violations of both state and federal laws and regulations by Mariner cause real harm to a vulnerable population of thousands of elder and dependent adults. Lack of staffing causes inattention to nutrition, medication, skin deterioration, violence, elopement, falls and death. Failure to comply with mandated reporting of dangerous incidents prevents administrative agencies from intervening on patient/residents' behalf. Failure to supply discharge notices and planning deprives patient/residents of fundamental due process. Falsely reporting staffing and quality measures to the Center for Medicare Services causes false inflation of publicly advertised ratings that induce more families to place their loved one into harm's way. The violation of state and federal law by Mariner must be stopped. If this Court is genuinely convinced that the progression of the case before Judge Seligman in the Alameda County California Superior Court will interfere with this Chapter 11 reorganization, then this Court must impose injunctive orders that protect these patient/residents while the Chapter 11 proceeds. This

Court must use its equitable power to impose the preliminary injunctive terms sought by the people and appoint sufficient special master monitors to inform the Court of ongoing progress of compliance with the orders.

## VII. CONCLUSION

The People of the State of California seek the protection of thousands of vulnerable patient/residents in the care of Mariner who are being currently underserved. The history of this investigation and State Court enforcement action reflect that the People of the State of California have treated Mariner with great deference and restraint. The wisdom of that restraint aside, it does not suggest that this enforcement action has been or will be prosecuted in a fashion that would interfere with a reorganization or focus upon pecuniary interests of the estate. What is sought first and foremost by the People is imposition of injunctive relief that is enforceable through onsite monitoring of compliance. The cost of that performance monitoring is minimal compared to the resources devoted to opposing it by Mariner. The law, common sense and humanity suggests that this Court should refrain from interfering with the imposition of such injunctive relief and if compelled to do so should take it upon this Court's own initiative to impose the same relief.

17

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**

Respectfully submitted,

Dated: October 18, 2022,

        Jeffrey S. Rosell
        District Attorney of Santa Cruz County

        Douglas B. Allen, State Bar No. 99239
        Assistant District Attorney
        701 Ocean Street, Suite 200
        Santa Cruz, CA. 95060
        Telephone: (831) 454-2930
        Fax: (831) 454-2227
        E-mail: Douglas.Allen@santacruzcounty.us

18

**OBJECTION**
TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF
AND ENJOINING PROSECUTION OF THE PSC ACTION

Rob Bonta
Attorney General of California
Jennifer Euler
Chief Assistant Attorney General
Joel Samuels, State Bar No. 234574
Supervising Deputy Attorney General
2329 Gateway Oaks Drive, Suite 200
Sacramento, CA 95833-4252
Telephone: (916) 621-1839
Fax: (916) 263-0426
E-mail: joel.samuels@doj.ca.gov

Nancy E. O'Malley
District Attorney of Alameda County
Lori Schnall, State Bar No. 195556
Deputy District Attorney
1225 Fallon Street, Suite 900
Oakland, CA 94612-4208
Telephone: (510) 272-6222
E-mail: Lori.Schnall@acgov.org

Lori E. Frugoli
District Attorney of Marin
Andres Perez, State Bar No. 186220
Deputy District Attorney
3501 Civic Center Drive, Suite 145
San Rafael, CA 94903-4189
Telephone: (415) 473-6450
Fax: (415) 473-3720
E-mail: Aperez@marincounty.org

George Gascon
District Attorney of Los Angeles County
Seza Mikikian, State Bar No. 245285
Deputy District Attorney
211 West Temple Street, Suite 1000
Los Angeles, CA 90012
Telephone: (213) 257-2450
E-mail: Smikikian@da.lacounty.gov

*Attorneys for Plaintiff,*
The People of the State of California

19

**OBJECTION**
**TO MOTION OF THE DEBTORS FOR AN ORDER GRANTING INJUNCTIVE RELIEF**
**AND ENJOINING PROSECUTION OF THE PSC ACTION**